# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSHOVAN HUSSAIN,

                  Petitioner,

       v.

RACHEL THOMPSON, Warden of
Federal Correctional Institution
Allenwood Low; MICHAEL
CARVAJAL, Director of the Federal
Bureau of Prisons; MERRICK
GARLAND, Attorney General of the
United States of America, in their
official capacities,

                 Respondents.

CASE NO.

Emergency Petition for Writ of Habeas
Corpus, Injunctive and Declaratory
Relief

IMMEDIATE RELIEF SOUGHT

## PETITIONER SUSHOVAN HUSSAIN'S
## HABEAS CORPUS PETITION
## PURSUANT TO 28 USC § 2241

FILED
SCRANTON

SEP 2 2 2021

PER _____
DEPUTY CLERK

1747879.v3

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................1

II.   APPLICABLE LAW ..............................................................5

    A.   Habeas Corpus Review ................................................5

    B.   CARES Act, Attorney General Barr's memo .....................6

    C.   Strict Scrutiny.............................................................8

III.  THIS COURT HAS AUTHORITY TO REVIEW PETITIONER'S
    HABEAS CORPUS ...............................................................9

IV.   FACTUAL & PROCEDURAL BACKGROUND/PARTIES .................9

V.    ARGUMENT......................................................................12

    A.   EXHAUSTION OF ADMINISTRATIVE REMEDIES....................12

    B.   RESPONDENTS' DETERMINATION, ON THE BASIS OF
        NATIONAL ORIGIN,TO 1). DENY SAFE HARBOR FROM
        THE COVID-19 PANDEMIC TO HUSSAIN, A MEDICALLY
        VULNERABLE INMATE, WHILE OFFERING SAFE
        HARBOR TO SIMILARLY SITUATED U.S. CITIZEN
        INMATES; AND 2). IMPOSE IMPERMISSIBLE AND
        PUNITIVE STANDARDS IN THE EXECUTION OF
        HUSSAIN'S SENTENCE THEREBY INCARCERATING
        HUSSAIN LONGER THAN SIMILARLY SITUATED U.S.
        CITIZENS, IS DISCRIMINATORY AND IN VIOLATION
        OF THE CONSTITUTION.................................................13

VI.   LEGAL AUTHORITY FOR PRO SE PETITIONER .................26

VII.  RELIEF REQUESTED .........................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.H. by Handling v. Minersville Area School District,*
290 F. Supp. 3d 321 (M.D. Pa. 2017)......................................................9

*Abdul-Akbar v. McKelvie,*
239 F 3d. 307 (3d Cir. 2001) ...............................................................13

*Acosta v. Wolf,*
No. 20-2528, 2020 WL 3077098 (E.D. Pa. June 10, 2020) ..................8

*ASAH v. New Jersey Dept. of Education,*
330 F. Supp. 3d 975 (2018) ...................................................................8

*Barden v. Keohane,*
921 F. 2d 476 (3d Cir. 1991) .................................................................9

*Bennett v. Unites States,*
2000 U.S. Dist. LEXIS 66409 (S.D. Ga 2006)...............................24, 25

*Bluebeard's Castle Hotel v. Gov't of Virgin Islands, Dep't of Lab.,*
786 F.2d 168 (3d Cir. 1986) ..................................................................8

*Bradshaw v. Carlson,*
682 F. 2d 1050 (3d Cir. 1981) .............................................................12

*Estelle v. Gamble,*
429 U.S. 97 (1976)................................................................................26

*Gallegos-Hernandez v. United States,*
688 F. 3d 190 (5th Cir. 2012) ..............................................................20

*Hughes v. Rowe,*
449 U.S. 5 (1980)..................................................................................26

*Leamer v. Fauver,*
288 F. 3d 532 (3d Cir. 2002) .................................................................5

*Lyons v. U.S. Marshalls,*
840 F. 2d 202 (3d Cir. 1988) ...............................................................13

1747879.v3

*Presier v. Rodriguez,*
    411 U.S. 475 (1973)..................................................................5

*Rodriguez v. Copenhaver,*
    823 F. 3d 1238 (9th Cir. 2016) ..........................................6, 9

*Ruiz-Loera v. United States,*
    2000 U.S. Dist. LEXIS 22795 (D. Utah June 23, 2000) ....................25

*Schumacher v. Nix,*
    965 F.2d 1262 (3d Cir. 1992) ..........................................8

*Sioux City Bridge Co. v. Dakota County, Neb.,*
    260 U.S. 441 (1923)..................................................................14

*Sunday Lake Iron Co. v. Wakefield TP.,*
    247 U.S. 350 (1918)..................................................................14

*Tedford v. Hepting,*
    990 F 2d 745 (3d Cir. 1993), cert. denied, 510 U.S. 920 (1993)..........................5

*Vasquez v. Strada,*
    684 F. 3d 431 (3d Cir. 2012) ..........................................9

*Village of Arlington Heights v. Metropolitan Housing Development
    Corp.,*
    429 U.S. 252 (1977)..................................................................8

*Woodall v. Federal Bureau of Prisons,*
    432 F. 3d. 235 (3d Cir. 2005) ..........................................5

**Federal Statutes**

5 U.S.C. § 703 ..................................................................5

18 U.S.C. § 3553 ..................................................................17

18 U.S.C. § 3621 ..................................................................5

18 U.S.C. § 3622 ..................................................................5

18 U.S.C. § 3623 ..................................................................5

18 U.S.C. § 3624 ..................................................................5

1747879.v3

18 U.S.C. § 3625 ..........................................................................................5

18 U.S.C. § 3626 ..........................................................................................5

28 U.S.C. § 2241 .......................................................................................1, 5

28 U.S.C. § 2243 ........................................................................................26

**Constitutional Provisions**

U.S. Const. Article V ........................................................................13, 17, 24

U.S. Const. Article XIV ..............................................................................13

1747879.v3

Petitioner Pro Se Sushovan Hussain ("Hussain") respectfully submits this petition for habeas corpus relief and will move this Court pursuant to 28 U.S.C.S 2241, in light of the prejudice suffered, the U.S. Constitution, and all applicable law, for a writ of habeas corpus granting his release from detention that violates his rights under the United States Constitution, or any other relief which this Court may deem just, necessary or appropriate.

## I.    INTRODUCTION

For decades, the Bureau of Prisons ("BOP") has engaged in discriminatory practices and abused its discretionary authority against foreign nationals. The BOP's discriminatory practices against Hussain and every foreign national, based solely on national origin, denies home confinement to medically vulnerable inmates, notwithstanding the CARES Act enacted by the U.S. Congress and the Attorney General's memo dated April 3, 2020 pursuant to the CARES Act, and denies certain rights that result in increased incarceration abridging Hussain's (and other similarly situated inmates') Constitutional rights. The discriminatory practices render the execution of the sentence on Hussain unconstitutional because they impose a more punitive standard on Hussain than other similarly situated U.S. citizen inmates based solely on his national origin. The U.S. Constitution forbids discrimination and the imposition of a more punitive standard on the basis of national origin. Yet the BOP decides who among the medically vulnerable inmates

1

should receive reprieve from COVID-19 and who should not, based on his/her national origin.

The discriminatory practices are established when non-U.S. citizens, including Hussain, are issued an immigration detainer by Immigration and Customs Enforcement ("ICE") on entry to the prison system. The BOP classifies Hussain and other non-U.S. citizen inmates with ICE Immigration Detainers a "Deportable Alien" (defined by the BOP as "[a] male or female inmate who is not a citizen of the United States"). The BOP, on receipt of the ICE Immigration Detainer, automatically assigns a Public Safety Factor ("PSF") to the "Deportable Alien" to determine the inmate's security designation and custody classification.

The blanket application of a PSF to Hussain and to all non-citizen inmates creates a class based on national origin and imposes a more punitive standard on that class - which is constitutionally impermissible. The imposition of a PSF to Hussain deprives Hussain and the non-citizen class certain rights afforded to other class of inmates. For example, it deprives Hussain and other non-citizen class of the ability to reduce their term of incarceration, while affording that same right to the U.S. citizen class of inmates. Other rights which Hussain and the non-citizen class are deprived of include early release to halfway house or home confinement or Elderly Offender Early Release to Home Confinement and access to certain rehabilitative programs such as the Residential Drug and Alcohol Program

("RDAP"). The BOP violates Hussain's rights of equal protection and rights under the CARES Act by applying a PSF to Hussain based on his national origin, where Hussain would otherwise qualify for home confinement and early release.

During the COVID-19 pandemic, this discrimination has resulted in (and continues to result in) the BOP only affording medically vulnerable U.S. citizen inmates the ability to transfer to the safe harbor of home confinement while denying Hussain and other similarly situated non-U.S. citizen inmates the same, thereby exposing Hussain and other non-U.S. citizens to potential illness and death in prison. This discrimination is in tension with the Attorney General's official instruction to "include all at-risk inmates - not only those who were previously eligible for transfer" to home confinement.

Discriminating against foreign-national prisoners also undermines the rehabilitative justification for the prison system as a whole. As the late Judge Weinstein of the Eastern District of New York explained, the BOP's disparate treatment of undocumented prisoners means that "[r]ehabilitative concerns weigh especially strongly against a term of imprisonment where the defendant is subject to deportation upon completion of a sentence." *See* Ex. 1.

By imposing the same punitive standards on Hussain and on the non-citizen class (whose detainer is based on their national origin) as other inmates (whose detainers are based solely on their conduct), these practices ignore the BOP's own

3

policy statements, punishing Hussain and the non-citizen class by imposing

constitutionally impermissible standard on them based solely on their national

origin. This impermissible standard discriminates and renders the execution of

Hussain's sentence unconstitutional. This BOP practice intentionally and

deliberately violates the Constitutional rights of Hussain and the non-citizen class.

Petitioner Hussain suffers from asthma "requiring two inhalers to help

control both chronic and acute exacerbations of [his] condition", see Ex. 2, placing

him at an increased risk of severe illness and possibly death from COVID-19,

according to the Center for Disease Control and Prevention ("CDC") *See* CDC,

People with Certain Medical Conditions, available at

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html. Respondents denied Hussain's request for home

confinement on the basis that Hussain was "ineligible" due to an ICE Immigration

Detainer which is issued on the basis of his national origin, whereas Respondents

have sent to home confinement 18,112 inmates since the pandemic started to

December 2020. *See* Memorandum from the Office of the Attorney General,

January 15, 2021. The BOP discriminates against Hussain punishing him where his

liberty interest is his health and safety and potentially his life. Furthermore, the

BOP's application of a PSF to Hussain, based on his national origin, imposes an

additional punishment by depriving him of the ability to reduce his term of

4

incarceration while affording similarly situated U.S. citizen inmates the same ability.

For the reasons summarized above, Hussain respectfully expounds below on the CARES Act, Constitutional Rights violation, prejudice suffered and respondents' abuse of statutory authorities. Hussain respectfully seeks relief from the Court to grant his requests in its entirety.

## II.     APPLICABLE LAW

### A.     Habeas Corpus Review

Under 28 U.S.C.S 2241, habeas corpus review "allows a federal prisoner to challenge the 'execution' of his sentence." *Woodall v. Federal Bureau of Prisons*, 432 F. 3d. 235, 241 (3d Cir. 2005). A habeas corpus petition may be brought by a prisoner who seeks to challenge either the fact or the duration of his confinement in prison. *Presier v. Rodriguez*, 411 U.S. 475 (1973); *Tedford v. Hepting*, 990 F 2d 745, 748 (3d Cir. 1993), cert. denied, 510 U.S. 920 (1993). Federal habeas relief is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." *Leamer v. Fauver*, 288 F. 3d 532, 540 (3d Cir. 2002). Under the Administrative Procedure Act (APA), habeas corpus may be used to challenge the BOP actions. *See* 5 U.S.C.§ 703. Under 18 U.S.C. § 3625, APA judicial review does not apply to "any determination, decision, or order" made under 18 U.S.C. §§ 3621-3626. A Court's review is limited to whether the BOP

Director abused his discretion, although "it does have jurisdiction to decide whether the [BOP] acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority...." *See e.g.*, *Rodriguez v. Copenhaver*, 823 F. 3d 1238, 1242 (9th Cir. 2016).

### B.     CARES Act, Attorney General Barr's memo

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). The CARES Act lifted the existing home confinement requirements (*i.e.*, 10 percent of sentence or 6 months) if the Attorney General made an emergency-conditions finding. In April 2020, the Attorney General endorsed a memo that made the emergency-condition finding and expanded home-confinement eligibility. *See* Memorandum for Director of Bureau of Prisons (April 3, 2020), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf) ("April 2020 AG memo"). As a result the existing requirements (*i.e.*, 10% of sentence or 6 months) went away. The April 3 memo followed the Attorney General's prior March 26 memo (available at https://www.justice.gov/file/1262731/download), which stated that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentence in home confinement rather than in BOP facilities." The Attorney General directed the Bureau of Prisons to "prioritize the

6

use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."

Attorney General Barr's directive gave a non-exhaustive list of discretionary factors to be used for home confinement. The Attorney General directed the BOP to consider the "age and vulnerability of the inmate to COVID-19, in accordance with the CDC guidelines." The other factors in the memo included: (1) the security level of the facility currently holding the inmate, with priority given to low security and minimum security facilities; (2) the inmate's prison conduct, especially involvement in violent or gang-related prison activity; (3) the inmate's PATTERN (the Prisoner Assessment Tool Targeting Estimated Risk and Need) score; (4) whether the inmate has a re-entry plan that will prevent recidivism and maximize public safety; (5) the inmate's crime of conviction and assessment of the danger posed by the inmate to the public.

In using the CARES Act to expand home confinement availability, the Attorney General's April 3, 2020 memo admitted that the Bureau of Prisons was "experiencing significant levels of infection at several of our facilities..." The memo acknowledged the BOP's duty to protect inmates and told the BOP to "[m]ove with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of the institutions." The Attorney General told the BOP to "begin implementing this directive immediately" and "as quickly as possible."

7

The Attorney General went on to authorize home confinement transfer "even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety."

### C.    Strict Scrutiny

"Discriminatory intent can be inferred from the fact of disparate treatment of members of different races and/or national origins in similar factual circumstances." *Bluebeard's Castle Hotel v. Gov't of Virgin Islands, Dep't of Lab.*, 786 F.2d 168, 171 (3d Cir. 1986) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977)).

"Strict scrutiny applies to classifications based on race, national origin, or religion." *Acosta v. Wolf*, No. 20-2528, 2020 WL 3077098, at *4 (E.D. Pa. June 10, 2020).

"[A] classification [that] trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage...must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest." *ASAH v. New Jersey Dept. of Education*, 330 F. Supp. 3d 975, 1007-08 (2018) (citing *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992) (internal quotations omitted) (alteration in original).

8

Laws that use classifications based on "race, alienage, or national origin" are subject to "strict scrutiny and will be sustained only if [it is] suitably tailored to serve a compelling state interest." *See A.H. by Handling v. Minersville Area School District*, 290 F. Supp. 3d 321, 331 (M.D. Pa. 2017).

## III.   THIS COURT HAS AUTHORITY TO REVIEW PETITIONER'S HABEAS CORPUS

Judicial review is necessary where respondents have abused their discretion and violated Petitioner's Constitutional rights. *See Vasquez v. Strada*, 684 F. 3d 431, 434 (3d Cir. 2012) (citing *Barden v. Keohane*, 921 F. 2d 476, 478 (3d Cir. 1991); *see also Rodriguez*, 823 F. 3d at 1242 ("Although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the [BOP] acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority").

Hussain contends the Respondents have abused their discretionary powers by imposing a standard that is discriminatory and unconstitutional based solely on his national origin, rather than on his offense conduct - thus violating his Constitutional rights.

## IV.   FACTUAL & PROCEDURAL BACKGROUND/PARTIES

Petitioner Sushovan Hussain, a citizen of the United Kingdom, was convicted of non-violent fraud related offenses on April 30, 2018. He was sentenced to a 60-month term of imprisonment on May 13, 2019. For thirty (30)

9

months (May 2018 to October 2020) - prior to self-reporting at the Allenwood

Correctional facilities in Pennsylvania - Hussain was confined with electronic

monitoring and ordered to stay within the boundaries of the Northern District of

California where he was under the jurisdiction of pre-trial services.

Hussain is a fifty-seven (57) year old, non-violent, first-time offender who

poses no danger to the community. As his sentencing judge, Judge Breyer,

explained: "I would find by clear and convincing evidence that he does not pose a

danger to the community." Sentencing Tr. (May 13, 2019) at 72:8-10. The PSR

concurred: "[Hussain] is not viewed [] a danger to the community." Presentence

Investigation Report ("PSR") at 3. Hussain is also very unlikely to recidivate.

Judge Breyer made clear that Hussain is committed to living a law-abiding life: "I

can't believe you would ever go out and commit another criminal offense, I just

don't believe it." *See* Sentencing Tr. (May 13, 2019) at 50:18-22. Hussain's

recidivism risk level has been determined by the BOP to be minimum as

demonstrated by his minimum PATTERN (Prisoner Assessment Tool Targeting

Estimated Risk and Need) score. *See* Ex.3.

To date Hussain has been incarcerated for eleven (11) months. He self-

reported, spending 72 days in solitary confinement for quarantine at Allenwood

Penitentiary before being moved to Allenwood Low. Hussain suffers from asthma

and high cholesterol. *See* Ex 2. Yet Hussain was placed at a unit in Allenwood

Low where 114 out of 116 inmates tested positive for COVID-19 just a few weeks before his placement. According to the CDC, Hussain's asthma places him as an increased risk of severe illness and possible death from COVID-19. Hussain's placement at a unit with almost 100% of inmates being infected with COVID-19 exposed him to serious illness or death given his CDC endorsed medical vulnerabilities.

Allenwood Low has been on "strict modified operations" since the time Hussain was transferred to his unit and, as of August 30, 2021, Allenwood Low was placed on "Level 3 Intense Modifications" due to COVID-19. *See* https://www.bop.gov/coronavirus/covid_19modified_operations_guide.jsp; https://www.bop.gov/coronavirus/covid19_status.jsp).

Despite the serious COVID-19 influenced lockdown, Hussain has completed the Adult Continuing (ACE) packets and First Step Act Courses that are available. However, unlike U.S. citizen inmates, Hussain receives no earned time credits for courses because of his national origin. Hussain has requested - and has been denied - permission to view his BP-337 Form ("Inmate Load and Security Designation"). An "Immigration Detainer - Notice of Action" was issued by the Department of Homeland Security on November 9, 2020. A corrected copy of the notice was provided to Hussain on April 5, 2021. *See* Ex. 4.

11

## V.   ARGUMENT

## A.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

On May 17, 2021, the Warden of Allenwood responded to Hussain's request

for clarification of her January 20, 2021 refusal of Hussain's eligibility to be

considered for home confinement, writing:

> "After a comprehensive review of your circumstances, in accordance
> with the Attorney General's criteria, you are not eligible for Home
> Confinement Placement. You currently have a detainer filed by
> Immigration and Customs Enforcement (ICE). In addition, you have
> served less than 50% of your sentence."

*See* Ex. 5.

Nothing more is required since any further attempts to exhaust

administrative remedies will be met with the exact same results. In any case, the

BOP's discrimination that renders the execution of Hussain's sentence

unconstitutional go beyond the denial of eligibility for home confinement; they

impose impermissible and punitive standards on Hussain. The BOP's

administrative procedure, having twice denied eligibility for home confinement, is

clearly inadequate to prevent irreparable harm to Hussain.

Furthermore, the Third Circuit has held that "[t]he exhaustion doctrine will

not be applied... when none of the basic goals (of the doctrine) would be served."

*Bradshaw v. Carlson*, 682 F. 2d 1050, 1052 (3d Cir. 1981) (internal quotation

marks omitted). For example, exhaustion may be excused when "[it] would be

futile, if the actions of the agency clearly and unambiguously violate statutory or

1747879.v3

constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshalls*, 840 F. 2d 202, 205 (3d Cir. 1988).

**B.     RESPONDENTS' DETERMINATION, ON THE BASIS OF NATIONAL ORIGIN,TO 1). DENY SAFE HARBOR FROM THE COVID-19 PANDEMIC TO HUSSAIN, A MEDICALLY VULNERABLE INMATE, WHILE OFFERING SAFE HARBOR TO SIMILARLY SITUATED U.S. CITIZEN INMATES; AND 2). IMPOSE IMPERMISSIBLE AND PUNITIVE STANDARDS IN THE EXECUTION OF HUSSAIN'S SENTENCE THEREBY INCARCERATING HUSSAIN LONGER THAN SIMILARLY SITUATED U.S. CITIZENS, IS DISCRIMINATORY AND IN VIOLATION OF THE CONSTITUTION.**

DISCUSSION

The Fifth Amendment of the U.S. Constitution confers an equal protection right to all persons within the jurisdiction of the United States. *See Abdul-Akbar v. McKelvie*, 239 F 3d. 307, 316-17 (3d. Cir. 2001) (en banc) ("Although the Fifth Amendment contains no Equal Protection Clause, ... Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment.") (internal citations omitted).  The U.S. Supreme Court has clarified that "[t]he purpose of the [E]qual [P]rotection [C]lause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted

13

agents." *Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 445 (1923)

(quoting *Sunday Lake Iron Co. v. Wakefield TP.*, 247 U.S. 350, 352 (1918)).

It is indisputable that discrimination should not be tolerated from any

government agency because it violates the U.S. Constitution, laws and democracy.

The BOP's own rules require that all inmates are to be treated equally:

> "Bureau staff shall not discriminate against inmates on the basis of
> race, religion, ***national origin,*** sex, disability, or political belief. This
> includes the making of administrative decisions and providing access
> to work, housing and programs".

*See* BOP Program Statement 1040.04 ("PS 1040.04") (emphasis added).

The Warden of each prison is similarly directed to "review and, as

necessary, establish local procedures to ensure that inmates are provided essential

equality of opportunity in being considered for various program options, work

assignments, and decisions concerning classification status." *Id.* at 2.

In denying Hussain - who suffers from asthma (one of the medical

vulnerabilities promulgated by the CDC) - eligibility to home confinement,

Hussain contends that he was treated differently by the BOP to other medically

vulnerable U.S. citizen inmates, and that Respondents have acted discriminatorily

and in violation of the U.S. Constitution.

In March 2020, the U.S. Congress enacted the CARES Act and on April 3,

2020, the Attorney General made an emergency declaration and issued a memo to

the Director of the Bureau of Prisons stating that all inmates with medical

vulnerabilities, as promulgated by the CDC, including those that did not qualify under the pre-CARES Act, should be considered for home confinement as a safe harbor from the pandemic, "your review should include all at-risk inmates not only those who were previously eligible for transfer". The memo added that "there are some at risk inmates who are non-violent, and pose minimum likelihood of recidivism who might be safer serving their sentence in home confinement rather than in BOP facilities".

Respondents' action, to deny Hussain eligibility to home confinement, is in tension with the Attorney General's memo to include "all at-risk inmates" and the CARES Act enacted by Congress. The memo, which authorized the BOP to respond to Hussain's request and expanded cohorts of inmates eligible for home release, focused on the medical vulnerability of the inmates to COVID-19, not their national origin. Respondents' reason for denying Hussain eligibility for home confinement was that Hussain had "a detainer filed by Immigration & Enforcement (ICE)." The BOP has acted discriminatorily and in violation of the Attorney General's memo, the CARES Act and the U.S. Constitution which forbid discrimination. The BOP's discrimination against Hussain on the basis of his national origin prejudices him where his liberty interest is his health and safety. Yet since the COVID-19 pandemic started to December 2020, the BOP removed to home confinement 18,112 U.S. citizen inmates.

15

The BOP supplemented the Attorney General's memo and made its own determination that it would only offer the safe harbor to U.S. citizen inmates while leaving Hussain, a fifty-seven (57) year old, non-violent, with minimum likelihood of recidivism, non U.S. citizen with medical vulnerability, incarcerated thereby exposing him to serious illness or death. Such action is discriminatory and violates the Constitution where Respondents decide to only protect U.S. citizen inmates while denying and depriving Hussain and all other medically vulnerable non-U.S. citizen inmates within their care the same safe harbor thereby leaving them in a dangerous environment with COVID raging through prisons, even more accentuated with the current virulent "Delta variant" of COVID-19. Despite Hussain's asthma, he was housed in a unit where almost 100% of the inmates had tested positive for COVID, placing Hussain at extreme risk to his health.

The question asked of the Court is whether "Respondents, who are responsible for the safety of all inmates within their custody/care, can selectively afford safe harbor from a deadly virus to only the citizens of the country, while denying and depriving other non-citizens the same safe harbor, solely on their national origins?"

The BOP's discriminatory practices, however, go well beyond the denial of home confinement. The BOP's current practices and policies intentionally punishes Hussain and other non-U.S. citizens more than U.S. citizens, thus creating

16

disparities between inmates who are citizens of the United States and those who are not. For instance, take two inmates - one a U.S. citizen and the other a non-citizen - who are co-defendants in a first-time white-collar prosecution, and who are sentenced to the same time of incarceration. Per current BOP policy and practice, the U.S. citizen will be entitled to earn time credit to reduce his/her time of incarceration by participating in First Step Act (FSA) recidivism reduction programming including productive work such as UNICOR; Adult Continuing Education (ACE) for more half-way house time and home confinement; and/or Residential Drug and Alcohol Program (RDAP) to reduce his/her time of incarceration by up-to a year. Hussain and other non-citizens will be entitled to no benefit even if they partake in these programs thus punishing Hussain and other non-citizens more harshly than the U.S. citizen based solely on their national origin rather than offense behavior.

Hussain does not benefit from any rehabilitation programming making the execution of his sentence unconstitutional given that current BOP policy and practice is designed solely to punish Hussain more harshly by incarcerating him without any benefit of rehabilitation. This practice and policy violates the true intent of 18 U.S.C. § 3553 which governs the imposition of sentences by the Courts, specifically the need to rehabilitate inmates as a reason for depriving them of their Fifth Amendment right to liberty and subjecting them to servitude. The 18

17

U.S.C. § 3553 factors are not intended to be punitive but are intended to be individualized for the purpose of rehabilitation. Thus, BOP's policies and practices towards Hussain are unacceptable and discriminatory, and require judicial intervention to rectify the prejudice suffered and the Constitutional rights violated.

The BOP argues that home confinement and benefits to early release are related to Hussain's ICE Immigration Detainer and the consequent assignment of a "Public Safety Factor" ("PSF"). The BOP's policies and practices are, however, discriminatory and an abuse of their statutory authorities.

The BOP identifies the following categories of detainers:

A - None

B - Disruptive Group (males only)

C - Greatest Severity Offense (males only)

F - Sex Offender

G - Threat to Government Officials

H - Deportable Alien

I - Sentence Length (males only)

K - Violent behavior

L - Serious escape

M - Prison Disturbance

N - Juvenile Violence

18

O - Serious Telephone Abuse

*See* Program Statement 5100.08 ("PS 5100.08"), Ch. 4, at 13, available at

https://www.bop.gov/policy/progstat/5100_008.pdf.

There are two classes of detainers, one that only applies to foreign nationals

arising out of national origins (H above) and the others which apply to all inmates

based on their conduct. The BOP rules clearly and unconditionally direct that the

two classes of detainers are separated as to how a PSF is to be applied. For the

purposes of security designation and custody classification, the BOP rules direct

the allocation of points for the "type of detainer." Specifically for ICE detainers,

the BOP is directed that "no points will be awarded", whereas points are awarded

for all other detainers. *See* BOP Forms BP 337 "Inmate Load and Security

Designation" and BP 338 "Custody Classification".

By applying a blanket PSF to all inmates with detainers, when one detainer

is solely based on national origin, the BOP has created a class based on national

origin, from which prejudice is suffered thereby violating the U.S. Constitution.

The BOP attempts to obfuscate by citing flight risk as a result of the receipt of the

ICE Immigration Detainer and the consequent assignment of a PSF as the basis for

its decision to refuse home confinement and access to early release programs.

However, the BOP discriminates against Hussain for the following reasons:

19

First, the BOP ignores the fact that the ICE Immigration Detainer itself explicitly directs the BOP to not discriminate: "This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters[.]" *See* DHS, Immigration Detainer - Notice of Action, available at https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf ("Immigration Detainer").

The agency that issued the Immigration Detainer recognizes the need to avoid discrimination on the basis of the detainer itself because the U.S. Constitution explicitly and unilaterally forbids such discrimination. Yet the BOP ignores this and proceeds to discriminate on the basis of national origin rather than considering the inmate's offense conduct (the basis on which PSFs are applied for U.S. citizen inmates).

The BOP contends that Courts have consistently recognized that alien prisoners subject to an immigration detainer cannot show that exclusion from BOP programs establishes an equal protection violation because alien prisoners, as an identifiable group, are not treated differently from federal prisoners who are not aliens. *See e.g., Gallegos-Hernandez v. United States*, 688 F. 3d 190, 195 (5th Cir. 2012).

20

This is too narrow a view adopted by the BOP and the Courts. Immigration Detainers are based on national origin, all other detainers are based on "demonstrable conduct". By defining the Immigration Detainer and all other detainers in one category, the BOP imposes a more punitive standard and incarcerates Hussain longer than similarly-situated U.S. citizen inmates because Respondents deny and deprive Hussain of all possibilities of earning time credits to reduce his term of incarceration. Such conduct violates the very bedrock of the United States Constitution, laws and democracy, all of which seek to treat every person within the United States territory equally, irrespective of their national origins, race, sex or religion.

Second, the BOP abuses its discretionary authorities by applying a PSF to Hussain and all non-citizen inmates with Immigration Detainers. The BOP does not act in accordance with its own Program Statement 5100.08 that only where a detainer is issued for an "offense conduct" BOP is required to apply a PSF. The BOP's rules require that a PSF is to be issued when "there are certain demonstrated behaviors which require increased security measures to ensure the protection of society". *See* PS 5100.08, Ch 2, at 4. The BOP is further directed to base the assignment of a PSF on "factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional

21

security measures be employed to ensure the safety and protection of the public."
*See id.*, Ch.5, at 7.

The Immigration Detainer does not describe any "offense conduct". It
provides no information about "demonstrated behaviors" nor "any factual
information regarding the inmate's current offense". It is completely different to an
"offense behavior" detainer as it is issued only on the basis that "probable cause
exists that the subject is a removal alien". The Immigration Detainer only requires
the BOP to "notify DHS as early as practicable… before the alien is released" and
to "[m]aintain custody of the alien for a period NOT TO EXCEED 48 HOURS
beyond the time when [he] would otherwise have been released from your custody
to allow DHS to assume custody." *See* Immigration Detainer at 1. The ICE
Detainer therefore provides no basis for the application of a PSF to Hussain, and
by applying such a PSF the BOP has abused its statutory authorities.

The BOP is required to determine the seriousness of the detainer by
"enter[ing] the appropriate number of points that reflect the inmate's detainer
status". *See* PS 5100.08, Ch. 6, at 2. The BOP is explicitly directed that "no points
will be awarded for ICE detainers." *See id.*, Ch. 4, at 12. These directives reflect
the fact that the Immigration Detainer does not identify any offense behavior.

A further rule confirms that the BOP must apply a PSF based on careful
review, on the offense conduct and on demonstrated behaviors, not automatically

as the BOP does presently. Within the definition of Deportable Alien the BOP is directed that a PSF "shall not be applied, or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive Office for Immigration review (EOIR) have determined that deportation proceedings are unwarranted or there is a finding not to deport at the completion of deportation proceedings." *Id.*, Ch. 5, at 9. There is no direction that a PSF shall be automatically applied for all deportable aliens; the rule simply directs that where a PSF has been applied (based on careful review, on demonstrated behaviors and on the offense conduct), then that PSF will be removed when deportation status is negatively determined.

The BOP's rules direct that it must strictly review each Immigration Detainer case carefully before applying a PSF: "each case will be carefully reviewed to determine whether the PSF for Deportable Alien is applicable." *See id.*, Ch. 4, at 12 and Ch. 6, at 3. The application of a PSF to an inmate with an Immigration Detainer cannot be automatic. Yet, contrary to its own rules, the BOP adopts a blanket policy of applying a PSF to Hussain and all non-U.S. citizens with an Immigration Detainer. Being a non-U.S. must not be the basis for imposing a PSF on Hussain.

The BOP has not reviewed Hussain's case for the "relevant factual information regarding the inmate's current offense". The BOP has not "carefully

23

reviewed to determine whether the PSF for Deportable Aliens is applicable" for Hussain. Instead the BOP applies a blanket PSF to all Deportable Aliens. In applying a PSF without following its own clear rules, a clear and intentional abuse of its statutory authorities has occurred.

The result is that the BOP has imposed a more punitive standard on the execution of Hussain's sentence, in violation of the U.S. Constitution. Stated another way, Respondents are not allowed to punish Hussain more harshly than U.S. citizen inmates solely based on his national origin. But current BOP policies and practices do precisely that.

Courts have adopted too narrow a view in accepting the BOP's arguments as being rational, ignoring its impact which incarcerates Hussain and non-U.S. citizen inmates longer than other similarly situated U.S. citizen inmates. In *Bennett v. U.S.*, the Court held that:

> "[The Bureau] does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country... and whom Congress has an interest in deterring from entering or returning ...  There is no equal protection violation in different treatment of aliens as to rehabilitation and other programs. The United States may treat deportable aliens and citizens differently. There is no primary interest in reformation of deportable persons. That's an interest of the country to which they may be deported"

1747879.v3

*Bennett v. Unites States*, 2000 U.S. Dist. LEXIS 66409, at *15-16 (S.D. Ga 2006) (quoting *Ruiz-Loera v. United States*, 2000 U.S. Dist. LEXIS 22795, at *2 (D. Utah June 23, 2000)) (citations omitted).

The Court in Bennett ignores the actual discriminatory issue. It is discrimination to incarcerate Hussain much longer than similarly situated U.S. citizen inmates, based solely on his national origins. Discriminatory practices based on the national origins of an individual is in tension with the Equal Protection rights enshrined in the Constitution. In the criminal justice system citizenship should be irrelevant to an inmate's treatment. Hussain's right to liberty and safe harbor from COVID-19 as a medically vulnerable inmate is violated by Respondents who discriminate and intentionally abuse their statutory authorities.

The courts have ignored the true issue here, that such discriminatory practice by respondents is intended to impose more punitive standard on the execution of sentence for Hussain and non-citizen inmates which is in violation of the U.S. Constitution. Stated another way, Respondents are not allowed to punish Hussain more harshly than U.S. citizens based on his national origin - but current BOP policy and practices do precisely that, in tension with their own rules. Hussain claims Respondents violate his equal protection rights and rights under the CARES Act in applying a PSF to him on the basis of his national origin, where Hussain

25

would otherwise qualify for home confinement and early release. There is no rationale to discriminate where Hussain's life and safety in under threat.

## VI.    LEGAL AUTHORITY FOR PRO SE PETITIONER

Hussain is a pro se petitioner, therefore his pleadings are generally liberally construed and held to a less stringent standard than pleading drafted by an attorney. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976).

## VII.   RELIEF REQUESTED

WHEREFORE, Petitioner Sushovan Hussain, BOP register Number 24067-111, respectfully requests that this Court order the following:

A.    Pursuant to 28 U.S.C.S 2243 and issue forthwith either:

    1.    A Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and /or a Writ of habeas corpus requiring respondents to release Petitioner within twenty-four (24) hours; OR

    2.    In the alternative, an order that Respondents show cause within at most three (3) days why such a writ should not issue.

B.    If immediate release is not granted on the basis of this petition alone, then expedited review of the petition, including oral arguments, via telephonic or video conference if necessary.

1747879.v3

C.     Any further relief this Court deems just, necessary, or appropriate.

Respectfully submitted,

Dated:  September 20 , 2021          SUSHOVAN HUSSAIN

FCI Allenwood Low
P. O. Box 1000
White Deer, Pa. 17887-1000

By:   */s/ Sushovan Hussain*
SUSHOVAN HUSSAIN

Petitioner Pro Se

27



CERTIFIED MAIL

7020 1810 0001 4643 1088

INMATE NAME/NUMBER: SUSHOVAN HUSSAIN 24067-111
FEDERAL CORRECTIONAL COMPLEX-ALLENWOOD LOW
P.O. BOX 1000
WHITE DEER, PA 17887

CERTIFIED MAIL
FOR USE ONLY WITH INMATE SHIPPING LABEL

LEGAL MAIL

RECEIVED
SCRANTON
SEP 22 2021
PER_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAM J. NEALON FEDERAL BLDG. & US COURTHOUSE
235 N WASHINGTON AVENUE
P.O. BOX 1148
SCRANTON PA. 18501-1148









U.S. POSTAGE PAID
FCM LG ENV
WHITE DEER, PA
17887
SEP 20, 21
AMOUNT
$0.00
R2305K138972-02

1000          18501