FILED
SCRANTON
SEP 22 2021
PER ___
DEPUTY CLERK

# EXHIBIT 1

COMMENTARY
# Federal Prisons Don't Even Try to Rehabilitate the Undocumented

*The Bureau of Prisons fails to provide basic resources to undocumented prisoners.*

JACOB SCHUMAN

THE FEDERAL BUREAU OF PRISONS claims its mission is to "provide work and self-improvement opportunities to assist offenders in becoming law-abiding citizens." When it comes to undocumented offenders, that's a lie.

The truth is that the BOP discriminates against undocumented people by denying them access to essential drug counseling and job training in prison.

As President Trump threatens to lock up even more undocumented immigrants, it's time for the BOP to reform these exclusionary policies, which are both ineffective and inhumane.

The U.S. Sentencing Commission reports that about one-third of all the people sent to federal prison each year are "illegal aliens." In 2016, more than half of all federal criminal prosecutions involved immigration-related offenses.

Despite the BOP's rehabilitative promises, the agency excludes these prisoners from its best addiction and vocational programs.

The BOP officially bars any prisoner subject to an order of deportation from participating in its "most intensive," nine-month Residential Drug Abuse Program, as well as from its compensated job-training program, Federal Prison Industries. The BOP similarly shuts out undocumented prisoners from its reentry-focused Release Preparation Program and even from its faith-based Life Connections Program.

The BOP strictly limits the access of undocumented prisoners to its other rehabilitative services. For example, some prisons offer occupational education programs intended to teach inmates marketable skills, but regulations specify that undocumented prisoners may only participate if resources permit after "meeting the needs of other eligible inmates."

The BOP's three-month Nonresidential Drug Abuse Program doesn't officially exclude undocumented prisoners, but officials still sometimes prevent prisoners from participating if they're subject to deportation.

The only remaining rehabilitative programs are a short drug abuse education course as well as a few literacy and English classes. (Unlike other incarcerated people, however, prisoners subject to deportation aren't required to attend.)

Even the few programs theoretically open to undocumented people are, in practice, denied to many because the government primarily incarcerates them in for-profit facilities that aren't required to offer rehabilitative services.

In 2016, the U.S. Department of Justice issued a memo announcing that it would reduce and eventually end its use of private prisons because the "rehabilitative services" in public facilities had "proved difficult to replicate and outsource" to private ones, which "simply d[id] not provide the same level of correctional services [or] programs." The Trump administration has since rescinded that memo, so the government's use of private prisons continues unabated.

These discriminatory policies also deprive undocumented prisoners of early release earned by completing drug treatment, evidence of self-improvement that might help at immigration hearings, and even money to spend at the prison commissary.

The government defends its disparate treatment of undocumented inmates by claiming that it's not worth it to spend resources rehabilitating people who will just be deported at the end of their sentences. Federal courts have accepted this argument and rejected constitutional challenges to the BOP's practices, ruling that it is not an equal protection violation to allow United States "citizen-inmates, who must re-enter domestic society," to participate in rehabilitative programs while "denying that privilege to

deportable inmates."

That logic is cruel on its face, and it becomes less and less tenable as the population of undocumented prisoners grows.

First, denying rehabilitative services to undocumented prisoners hurts everyone. As the BOP itself has observed, addiction treatment improves the prison environment for both inmates and staff by reducing inmate misconduct and improving health and mental health.

Job training offers inmates a sense of purpose, decreasing recidivism and making prisons more livable. By excluding tens of thousands of inmates from these opportunities solely based on their immigration status, the BOP makes its prisons more desperate and dangerous places overall.

Second, discriminating against undocumented prisoners in this way undermines the rehabilitative justification for the prison system as a whole.

Through its exclusionary rules, the federal government has effectively renounced its interest in approximately one-third of all its prisoners. It's inhumane to lock up so many people so callously. Denying drug and job programming to such a large proportion of the incarcerated population turns our federal prisons into internment camps.

Finally, not all prisoners subject to deportation are actually removed from the United States. Some successfully fight their deportations by, for example, showing that they face persecution or torture or that their countries of origin won't accept them. Every year, the government releases thousands of people it previously ordered removed.

It makes no sense for the BOP to refuse to rehabilitate such individuals when they may well remain in this country.

As a federal public defender, I've seen the harm first-hand. One of my clients legally entered this country as a refugee but was ordered deported after he fell into opiate addiction and crime. When his country of origin wouldn't accept him, he was released into the United States, still subject to the deportation order. Since then, he has twice returned to federal prison for drug-related crimes. Without addiction treatment, this tragic cycle is likely to continue.

In another case, I represented an undocumented prisoner who was serving double the recommended sentence in part because the judge thought he would benefit from alcohol counseling and job training in prison. Apparently, the judge was unaware that he would be ineligible for these services due to his immigration status.

To live up to its mission statement, the BOP must allow undocumented prisoners access to drug treatment and job training. The Department of Justice also must stop incarcerating inmates in private facilities that don't offer such programs.

In the meantime, federal judges should account for these policies by imposing shorter sentences on undocumented defendants. As Judge Jack Weinstein of the Eastern District of New York explained, the BOP's disparate treatment of undocumented prisoners means that "[r]ehabilitative concerns weigh especially strongly against a term of imprisonment where the defendant is subject to deportation upon completion of a sentence."

The federal government has increasingly turned to criminal law to enforce restrictions on immigration, creating what is now described as a "crimmigration" system. For all the problems with this approach, the least the BOP can do is provide undocumented inmates the most basic resource for surviving prison: hope.

Jacob Schuman is a federal public defender in Philadelphia.

INMATE NAME/NUMBER: SUSHOMN HUSSAIN 24067-111
FEDERAL CORRECTIONAL COMPLEX-ALLENWOOD LOW
P.O. BOX 1000
WHITE DEER, PA 17887

CERTIFIED MAIL

7020 1810 0001 4643 1088

LEGAL MAIL

RECEIVED
SCRANTON
SEP 22 2021
PER _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAM J. NEALON FEDERAL BLDG. & US COURTHOUSE
235 N WASHINGTON AVENUE
P.O. BOX 1148
SCRANTON, PA 18501-1148

U.S. POSTAGE PAID
FCM LG ENV
WHITE DEER, PA
17887
SEP 20 21
AMOUNT
$0.00
R2305K138972-02