x

Sushovan Hussain
Reg. No. 24067-111
FCI Allenwood Low
P.O. Box 1000
White Deer, Pa. 17887-1000

Hon. Malachy E. Mannion
UNITED STATES DISTRICT COURT
For the Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 North Washington Avenue
P.O. Box 1148
Scranton, Pa. 18501-1148

October 4, 2021

Regarding: Hussain v. Thompson et. al.
Civil Case No. 3:21-cv-01635-MEM-DB
Petition for Temporary Restraining Order

FILED
SCRANTON
OCT 08 2021
PER _____
DEPUTY CLERK

Dear Judge Mannion:

Petitioner Pro Se Sushovan Hussain ("Hussain") respectfully submits this petition and will move this Court before Hon. Mannion, United States District Judge at Middle District of Pennsylvania, for an order granting Hussain's request for temporary restraining order ("TRO") and/or preliminary injunction, in light of the pleadings contained within the habeas corpus petition at Dkt. No. 1.

LEGAL STANDARD:

The standards for a TRO are the same as for a preliminary injunction. See Ellakkany v. Common Pleas Court of Montgomery Cnty., 658 Fed. Appx. 25, 27 (3d Cir. July 27, 2016) (applying one standard to a motion for both a TRO and preliminary injunction). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Apple Inc. v. Samsung Electronics Co., 695 F. 3d 1370, 1373-74 (Fed. Cir. 2012) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

The Supreme Court has emphasized that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997); Apotex Inc. U.S. Food and Drug Admin., 508 F. Supp 2d 78, 82 (D.D.C. 2007) ("Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly."). "Awarding preliminary injunctive relief, therefore, is only appropriate upon a clear showing that the plaintiff is entitled to such relief." Groupe SEC USA, Inc. v. Euro-Pro Operating LLC, 774 F. 3d 192, 197 (3d Cir. 2014) (quoting Winter, 555 U.S.at 22).

Irreparable Harm:

To succeed in his motion, Petitioner "must demonstrate ... the probability of irreparable harm if relief is not granted." Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F 2d 100, 102 (3d Cir. 1988) (internal quotations omitted). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial" .. the temporary restraining order .. "must be the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air freight, Inc., 882 F. 2d 797, 801 (3d Cir. 1989). Petitioner must demonstrate that he is likely to suffer "actual or imminent harm which cannot otherwise be compensated by money damages," or it "fail[s] to sustain its substantial burden of showing irreparable harm." Frank's GMC, 847 F. 2d at 103. The mere risk of injury is insufficient. Petitioner must establish that the harm is imminent and probable. Anderson v. Davila, 125 F. 3d 148, 164, 37 V.I. 496 (3d Cir. 1997). "a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather the moving party must make a clear showing of immediate irreparable harm." Campbell Soup Co. v. ConAgra, Inc., 977 F. 2d 86, 91 (3d Cir.

1992).

Hussain contends that he will suffer imminent, irreparable harm.

Hussain contends that he will suffer imminent harm because there are live COVID-19 cases in his prison. On September 22, Hussain became aware of COVID-19 cases having been diagnosed in the unit adjacent to where he is housed. More cases have been diagnosed in that unit in the subsequent days even after it was placed in quarantine. For the past several months that housing unit and Hussain's housing unit had been operating as one cohort, with inmates mixing freely outside of the housing units for meals, recreation and work. In Hussain's housing unit, as far as he is aware, there has been no testing for COVID-19, so it is unknown whether the COVID-19 virus is already circulating there.

The likelihood of contracting the disease is not mere speculation. It is highly likely that Hussain will contract the virus given its extreme virulence in prison settings. Hussain's housing unit has already suffered heavily with 114 out of 116 inmates contracting COVID-19 in December 2020, just a few weeks before Hussain was placed there in early January 2021, thus demonstrating the virulence of the virus in prison.

Public health officials have acknowledged the virulence of COVID-19 in prison:

> "Incarcerated populations have experienced disproportionately higher rates of COVID-19 related illness and death compared to the general U.S. population, due in part to the congregate living environment that can facilitate rapid transmission of SARS-CoV-2, the virus that causes COVID-19, and the high prevalence of underlying medical conditions associated with severe COVID-19" (see appended Exhibit 1).

The Centers for Disease Prevention and Control ("CDC") study in Exhibit 1 makes for very sober reading. Their detailed study of a Texas Federal prison, where COVID struck in July and August 2021, found that "transmission rates were high, even among vaccinated persons" and identified "moderate to severe asthma" as one of the critical "underlying medical conditions" to COVID-19 illness. In the study, even though 79% of the Texas prison population was vaccinated, the COVID-19 "attack rate" for both vaccinated and unvaccinated inmates was 74%. Vaccination provided no barrier to the virus with 70% of vaccinated inmates contracting the virus. In addition, the longer the time that an inmate had had the vaccine increased the inmate's probability of contracting COVID-19. The study found that the percentage of vaccinated inmates who contracted the disease, having been vaccinated 4 or months prior, was 89%. Hussain received his vaccine seven months prior to the date of this letter and is, therefore, at high probability of contracting the virus.

Hussain contends that he will suffer irreparable harm should he contract COVID-19 because of his medical vulnerability. Aged 57, Hussain suffers from asthma "requiring two inhalers to help control both chronic and acute exacerbations of [his] condition". See Dkt. No.1. The effects of COVID-19 is drastically more severe in older people and those with underlying medical conditions. (see Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher risk.html). Scientific consensus is that pre-existing asthma exacerbates the serious risks already posed by the Coronavirus pandemic. The CDC has explained that moderate to severe asthma increases risks for "serious illness." (see CDC, People with Certain medical Conditions (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html)

Courts have held that COVID-19 constitutes an irreparable harm that supports the grant of a TRO. See Vasif "Vincent" Basank, et al v. Decker, 2020 U.S. Dist. LEXIS 53191, 2020 WL 1481503 at *4-5 (S.D.N.Y. March 26, 2020) ("The risk that Petitioners will face a severe, and quite possibly fatal infection if they remain in immigration detention constitutes irreparable harm warranting a TRO"); Catillo v. Barr, CV-20-00605-TJH, 2020 UmS. Dist. LEXIS 54425 (C.D. Cal. 2020) (granting a TRO to immigration detainees due to the COVID-19 pandemic; see also Shapiro v. Cadman Towers, Inc., 51 F. 3d 328, 332 (2d Cir. 1995) (finding irreparable harm "premised ... upon [the district court's] finding that [Petitioner] was subject to risk of injury, infection and humiliation"); Mayer v. Wing, 922 F. Supp. 902, 909 (S.D.N.Y. 1996) ("[T]he deprivation of life-sustaining medical services ... certainly constitutes irreparable harm.")

Likelihood of Success on the Merits:

Hussain relies on the arguments contained within his habeas corpus petition (at Dkt. No. 1)

Balancing of the equities and public interest:

The U.S. Constitution forbids discrimination irrespective of national origins, the Courts are empowered to uphold the rule of law and protect the Constitutional rights of every person(s) within the U.S. territories. The public interest strongly favors the Government respecting and protecting the Constitutional rights of all aliens irrespective of their national origins.

There is no harm to Respondents. Hussain has spent thirty (30) months (from May 2018 to October 2020), prior to self-reporting at the Allenwood Correctional Facilities in Pennsylvania, confined with electronic monitoring and ordered to stay within the boundaries of the Northern District of California under the jurisdiction of pre-trial services, demonstrating that Hussain can be safely housed under home confinement. Hussain declares that he will rent an apartment and will have access to suitable healthcare if placed on home confinement (see appended Affidavit).

Hussain is very unlikely to recidivate. Judge Breyer made clear that Hussain is committed to living a law-abiding life "I can't believe that you [Hussain] would ever go out and commit another criminal offense" (see Dkt. No. 1). Hussain's recidivism level has been determined by the Bureau of Prisons to be minimum (see Dkt. No. 1 Ex. 3).

The public interest favors protecting every person(s) including foreign nationals from a dangerous virus. The public interest is served by Respondents considering "all at-risk inmates" for home confinement not choosing to exclude Hussain on the basis of his ICE Immigration Detainer, in contravention of his Constitutional Rights and in contravention of the Bureau's statutory authorities.

CONCLUSION

In other countries people may be discriminated against based upon their race, national origins etc. Some people may be deprived of education, basic human rights etc. In this country, however, the Constitution protects every person(s) irrespective of national origins. This Court should not permit any Government agency, including the Federal Bureau of Prisons, to set their own agenda to discriminate and abuse their statutory authorities where COVID-19 presents imminent and irreparable harm to medically vulnerable foreign national inmates such as Petitioner Hussain.

Dated: October 4, 2021
White Deer, Pa. 17887-1000

Respectfully submitted

/s/ Sushovan Hussain
SUSHOVAN HUSSAIN
Federal Correctional Institution
Allenwood Low
P. O. Box 1000
White Deer, Pa. 17887-1000

Pro Se Petitioner

INMATE NAME/NUMBER: SUSHOVAN HUSSAIN - 24067-111
FEDERAL CORRECTIONAL COMPLEX - ALLENWOOD LOW
P.O. BOX 1000
WHITE DEER, PA 17887

U.S. POSTAGE PAID
FCM LG ENV
WHITE DEER, PA
17887
OCT 05, 21
AMOUNT
$0.00
R2305K138972-08

CERTIFIED MAIL

RECEIVED
SCRANTON
OCT 08 2021
PER _____
DEPUTY CLERK

HON. MALACHY E. MANNION
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
WILLIAM J. NEALON FEDERAL BLDG & U.S. COURTHOUSE
235 NORTH WASHINGTON AVENUE
P.O. BOX 1148
SCRANTON, PA. 18501-1148

LEGAL MAIL

7000 0600 0053 2001 2547

